UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                      CIVIL ACTION NO. 2:12-1631

**$73,300.00, MORE OR LESS,
IN UNITED STATES CURRENCY,**

        Defendant.

## VERIFIED COMPLAINT OF FORFEITURE

Comes now the United States of America, by and through its attorneys, R. Booth Goodwin II, United States Attorney for the Southern District of West Virginia, and Betty A. Pullin, Assistant United States Attorney for the Southern District of West Virginia, and respectfully states as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought on behalf of the United States of America, pursuant to 18 U.S.C. § 983(a), to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), for the forfeiture of the defendant currency on the grounds that it constitutes or was derived from proceeds traceable to one or more violations of 18 U.S.C. § 2342(a) (trafficking in contraband cigarettes). Alternatively, the defendant currency is subject to forfeiture to the United States pursuant to 18 U.S.C.

§ 981(a)(1)(A) on the grounds that it constitutes property involved in one or more violations of 18 U.S.C. § 1956(a)(1)(A)(i) (conducting or attempting to conduct one or more financial transactions involving the proceeds of specified unlawful activity, that is, contraband cigarette trafficking, with the intent to promote the carrying on of the specified lawful activity).

### THE DEFENDANT IN REM AND POTENTIAL INTERESTED PARTIES

2. The defendant property consists of the sum of $73,300.00, more or less, in United States currency that was seized from Haider Sami Hammoud on or about October 27, 2011, during a traffic stop by officers with the Charleston Police Department near the 99 mile marker of the southbound lane of Interstate 77, Charleston, Kanawha County, West Virginia. Hammoud was the sole occupant of a white late model Dodge minivan, bearing Florida plates. The currency consists of the following:

(A) The sum of $3,000.00, more or less, in folded $50 bills, located in Hammoud's pants pocket;

(B) The sum of $70,000.00, more or less, in United States currency located inside a small blue shaving bag found inside a larger camouflage duffle bag inside the van; and

(C) The sum of $300.00, more or less, in United States currency located in Hammoud's wallet.

3. The driver of the van and the person from whom the defendant currency was physically seized was identified as Haider Sami Hammoud, 6132 Mead Street, Dearborn, Michigan, 48126.

4. Other possible interested parties are:

   (A) Hassan Bazzi, 15733 Telegraph, Redford, Michigan, 48239; and

   (B) Platinum Auto Group, Inc., 27621 Ford Road, Garden City, Michigan, 48135.

5. The above-described seized currency is presently in the custody of the United States Customs and Border Protection, reference FP&F Case No. 2012140900000201.

## JURISDICTION AND VENUE

6. Plaintiff, United States of America, brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

7. Venue is proper in this district, pursuant to 28 U.S.C. 1355(b)(1)(A), since the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(b), because the property is located in this district.

8. Upon the filing of this verified complaint, the plaintiff requests that the Clerk of this Court issue an arrest warrant <u>in rem</u> pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will execute upon the seized currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**THE ADMINISTRATIVE PROCESS**

9. On October 27, 2011, the defendant currency was seized by the Charleston Police Department as proceeds of trafficking in contraband cigarettes. The Charleston Police Department turned over the seized currency to the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (hereinafter "HSI"), for forfeiture under federal law. HSI's forfeitures are processed through the United States Customs and Border Protection agency (hereinafter "CBP"). Accordingly, pursuant to 18 U.S.C. § 983(a)(1)(A)(iv), CBP had 90 days after the date of seizure (i.e., until January 25, 2012) to send notice to interested parties in the nonjudicial forfeiture proceeding.

10. On November 14, 2011, CBP timely sent notice of the seizure to Haider Hammoud. Hammoud, through legal counsel, petitioned the CBP for the return of the currency, alleging that $53,000 of the seized currency belonged to Hassan Bazzi.

11. On January 20, 2012, CPB denied Hammoud's petition. On this same date, CBP sent notice of the seizure to Hassan Bazzi.

4

12. On February 21, 2012, Hammoud submitted to CBP a request for judicial review of the forfeitability of $20,300 of the defendant currency. As a result, CBP referred the seizure of $20,300 to the United States Attorney's Office for the initiation of judicial forfeiture proceedings. Pursuant to 18 U.S.C. § 983(a)(3)(A), the deadline for the United States to file this complaint as to Hammoud's interest is no later than 90 days after his claim was filed with CBP, that is, no later than May 21, 2012.

13. Also on February 21, 2012, Hassan Bazzi petitioned the CBP for the return of $53,000 of the defendant currency, which CBP denied by letter to Bazzi's counsel dated March 15, 2012.

14. On March 29, 2012, Bazzi submitted to CBP a request for judicial review of the forfeitability of $53,000 of the defendant currency. As a result, CBP referred the seizure to the United States Attorney's Office for the initiation of judicial forfeiture procedings. Pursuant to 18 U.S.C. § 983(a)(3)(A), the deadline for the United States to file a complaint as to Bazzi's interest is no later than 90 days after his claim was filed with CBP, that is, no later than June 27, 2012.

15. This verified complaint having been filed no later than May 21, 2012, as to the claims of both Hammoud and Bazzi, is timely.

**BASIS FOR FORFEITURE**

16. The facts giving rise to the forfeitability of the defendant currency are as follows:

(A) On October 27, 2011, officers with the Charleston Police Department, Charleston, West Virginia, conducted a traffic stop of a white Dodge Caravan, bearing Florida registration no. 467YSL, on Interstate 77, near the 99 mile marker, for speeding. The van was being driven by Haider Sami Hammoud and had been rented by Hammoud from National Car Rental at the Detroit Metro Airport in Michigan. Hammoud was the sole occupant of the vehicle.

(B) Hammoud appeared very nervous throughout the traffic stop. He told the officers he was traveling to Florida to buy a car and would be there for approximately a week, however, no luggage was observed in the van.

(C) One of the officers conducted a patdown search of Hammoud for weapons. The officer felt a bulge in Hammoud's right front pants pocket. Upon removing the contents of the pocket, the officer found it to be approximately $3,000 in folded $50 bills.

(D) Hammoud consented to the search of the van. An officer opened the rear door and the only item in the back of the van was a large camouflage duffle bag. Hammoud told the officer that "his stuff" was in the bag. Upon opening the bag, the officer found a blanket, a sheet, a sleeping bag and a small shaving bag.

When he opened the shaving bag, the officer found seven bundles of large amounts of United States currency. When the officer found the currency, he observed Hammoud to hang his head. Hammoud told the officer that he had just sold a car and was returning the currency to Florida. Officers then utilized a drug detection dog (K-9) which made a positive alert on the van.

(E) Hammoud gave inconsistent statements to another officer regarding the currency:

(1) Hammoud stated he was traveling to Florida to buy a car, most likely a "Mercedes" or a "BM;"

(2) Hammoud stated that the money was from a man named "Sam" who owned a car dealership in Michigan but he did not know Sam's last name and could not provide a telephone number for Sam, saying Sam did not like to be contacted;

(3) Hammoud then stated that only $53,000 belonged to Sam and that the remaining $20,000 belonged to him;

(4) Hammoud told the officers that he had not worked in approximately three years and the last job he had was that of an ice cream truck operator during the summer, making about $6,000 per year.

(F) During the search of the vehicle, officers observed that all the rear seats of the van had been either removed or folded down to make room for transporting something. Inside a zippered pouch of the camouflage bag, officers found two pieces of

7

paper appearing to be ledgers for cigarette orders containing types of brands, how many requested and the cost per carton. The papers gave a total number of cigarettes to be purchased and a total cost of the purchase, e.g., 1,421 cartons and $58,677.00.

(G) Hammoud is a naturalized United States citizen from Lebanon. Hammoud told officers he has lived in the United States for about 19 years. However, when officers confronted Hammoud with the cigarette ledger papers found in the duffle bag, Hammoud's demeanor changed. He began to speak rapidly and breath heavily, and his ability to understand English worsened. Hammoud claimed he could not read English and did not know what was written on the papers. He further claimed that he found the duffle bag in the trash and denied knowledge of the papers.

(H) A consensual search of Hammoud's wallet revealed $300.00 in United States currency and a third paper, similar to the two found in the duffle bag, listing cigarette types and quantities. Hammoud claimed he did not know how the paper got into his wallet.

(I) Hammoud was issued a warning citation for speeding and released. A Charleston Police Officer advised Hammoud that he was seizing the paperwork, currency and Hammoud's two cell phones as evidence of, and for further investigation into, possible contraband cigarette trafficking. Hammoud was given the officer's business card and was told to contact "Sam" so that Hammoud and Sam

could provide proof to the officer of the legitimacy of the seized currency.

17. The $73,300 in United States currency was then turned over by the Charleston Police Department to HSI for federal forfeiture as suspected proceeds of contraband cigarette trafficking.

18. Based upon the totality of the circumstances as alleged in paragraph 16 and its subparts, the defendant currency constitutes or was derived from proceeds traceable to one or more violations of 18 U.S.C. § 2342(a) (trafficking in contraband cigarettes) and, therefore, is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). Alternatively, the defendant currency constitutes property involved in one or more violations of 18 U.S.C. § 1956(a)(1)(A)(i) (conducting or attempting to conduct one or more financial transactions involving the proceeds of specified unlawful activity, that is, contraband cigarette trafficking, with the intent to promote the carrying on of the specified lawful activity) and, therefore, is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays that process of warrant <u>in rem</u> issue for the arrest of the defendant currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

        Respectfully submitted,

        R. BOOTH GOODWIN II
        United States Attorney

By:   <u>s/Betty A. Pullin</u>
        Betty A. Pullin, WV Bar Number: 5590
        Attorney for the United States
        300 Virginia Street, East, Room 4000
        Charleston, West Virginia 25301
        Telephone: (304) 345-2200
        Fax: (304) 347-5104
        Email: <u>betty.pullin@usdoj.gov</u>

**VERIFICATION**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO-WIT:

I, CHRISTOPHER M. MILLER, Resident Agent in Charge, Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture in rem is based upon reports and information I have gathered and that has been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on 21st of May 2012.

_____
CHRISTOPHER M. MILLER

Taken, subscribed and sworn to before me this 21st day of May, 2012.

My commission expires on 12-26-2020.

(NOTARY SEAL)

_____
Notary Public

11